IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CARNEY ELDRIDGE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:04-CV-2073-D |
| VS. | § | |
| | § | |
| AMERICAN RESIDENTIAL SERVICES | § | |
| L.L.C. f/k/a RESCUE ROOTER, | § | |
| L.L.C., | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

This is an action by plaintiff Carney Eldridge ("Eldridge") against defendant American Residential Services L.L.C. f/k/a Rescue Rooter, L.L.C. ("ARS") for disability discrimination under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, and for retaliation for filing a claim for workers' compensation benefits, in violation of the Texas Workers' Compensation Act ("TWCA"), Tex. Lab. Code Ann. § 451.001 (Vernon 1996). ARS's motion for summary judgment presents the dispositive questions whether Eldridge is disabled within the meaning of the ADA and whether he has adduced evidence that would permit a reasonable trier of fact to find retaliation. Concluding that a reasonable trier of fact could not find that Eldridge is disabled or that ARS retaliated against him, the court grants ARS's motion. Because the court has raised *sua sponte* one ground on which it relies to dismiss Eldridge's TWCA-based retaliation claim, it permits Eldridge to file a response in opposition to granting

summary judgment as to that claim.

I

A

Eldridge——a former ARS Service Technician——sues ARS for disability discrimination under the ADA and for retaliating against him, in violation of the TWCA, for filing a claim for workers' compensation benefits.  He started his employment in February 1991, working as a Responsible Master Plumber at the Dallas-Fort Worth Rescue Rooter office.[1]  From 1991 to 2001 Eldridge was responsible at various times for the Dallas, Fort Worth, and/or Houston Rescue Rooter[2] locations.

In October 2002 Eldridge developed fluid on his right knee.  An Employer's First Report of Injury or Illness dated October 21, 2002 reflected that Eldridge claimed the injury was work related, and the report commenced the workers' compensation claim process.  Following a doctor appointment on October 22, 2002, the physician recommended that Eldridge not kneel, squat, or climb stairs or ladders.  At an October 29, 2002 appointment, the doctor prescribed sedentary duty and restricted him from standing, kneeling,

---

[1]The court recounts the evidence in a light favorable to Eldridge, as the summary judgment nonmovant, and draws all reasonable inferences in his favor.  *See, e.g., U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.) (citing *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000)).

[2]ARS purchased Rescue Rooter in 1999.

squatting, bending, stooping, or climbing stairs or a ladder, and limited him to minimal walking. Eldridge was referred to an orthopaedic surgeon, who drained his knee and prescribed an anti-inflammatory medicine.

In December 2002 Eldridge, accompanied by his case worker, saw Richard F. Haenke, D.O. ("Dr. Haenke"), an orthopaedic surgeon. Dr. Haenke diagnosed bursitis and traumatic chondromalacia of his right knee. He recommended arthroscopy for bursectomy and possible chondroplasty and synovectomy, continued light duty status, medication, and an MRI for his right knee. Dr. Haenke placed Eldridge on restrictions of two hours of standing per day, no kneeling or squatting, no bending or stooping, two hours of walking, no climbing stairs or ladders, and no lifting or carrying objects weighing more than 20 pounds. He also prescribed 50% sedentary work. Eldridge underwent an MRI later in December. Dr. Haenke saw Eldridge again on December 30, 2002 and advised him that he might require surgery to remove the bursa and arthroscopic surgery to repair the damage to his right knee.

Eldridge had applied on December 12, 2002 for a workers' compensation leave of absence. John Polk ("Polk"), ARS's Safety Supervisor and Assistant Manager, informed Eldridge that ARS no longer had any sedentary or light duty jobs available that could accommodate the restrictions that Eldridge's doctor had imposed. In a December 18, 2002 letter, ARS approved workers' compensation

leave beginning December 16, 2002 and ending when Eldridge was released by his treating physician.

In January 2003 Dr. Haenke removed the bursa and performed arthroscopic surgery on Eldridge's right knee. Eldridge began physical therapy for eight to ten weeks as part of a work hardening program. On May 21, 2003 Dr. Haenke released Eldridge to return to work with permanent restrictions. These included limiting his time on his knees and not being required to lift over 50 pounds on a regular basis. Dr. Haenke also completed a Texas Workers' Compensation Commission Work Status Report that included a Functional Capacity Equivalent. He opined that Eldridge was qualified to perform light duty work, including occasional lifting of 13 pounds, frequent lifting of seven pounds, and no constant lifting. In a May 21, 2003 letter, Dr. Haenke stated that Eldridge was ready for Maximum Medical Improvement and that he was ready to return to light duty only per his Functional Capacity Evaluation, but that his job was heavy duty so that he would have to be retrained for some other type of work. Dr. Haenke informed Eldridge that he could continue his line of work if he had a helper with him.

On May 21 Eldridge attempted to return to work and met with Joe Dan Parson ("Parson"), ARS's General Manager, Polk, and Tammy Johnson ("Johnson"), ARS's Regional People Services Manager. Eldridge informed them that he wanted to continue working at ARS,

but he was informed that there were no available positions at the office or any alternative work.  He also advised them that Dr. Haenke had told him he could continue to work in the field as a plumber, provided he had a helper.  When Eldridge requested that ARS accommodate his disability, he was informed that there were no available positions.  As a last alternative, he requested to return to the field with the assistance of a full-time helper.[3]

At the end of May, Parson advised Eldridge that he would furnish a helper if Eldridge would agree to go on commission.  The helper's pay would be taken from the commission before Eldridge was paid.  Eldridge agreed to this arrangement effective June 1, 2003.  On Monday, June 2 through Wednesday, June 4, Eldridge prepared and stocked his truck and worked one day without a helper.  On Thursday, June 5, Parson called Eldridge to his office and informed him that he could not continue to work until ARS's corporate office knew more about his disability and that he needed to return the truck to the shop.

Johnson advised Eldridge in July that ARS was not willing to accommodate his disability because it felt doing so imposed a hardship.  She said ARS was willing to help with the transition and was looking for a dollar amount to resolve Eldridge's situation.  Johnson left on sick leave, and Eldridge communicated with Nancy

---

[3]According to Eldridge, the helper would assist him in lifting and moving heavy objects and in performing work that would require extended time on his knees.

Price ("Price"), ARS's Human Resources Manager located at corporate headquarters in Memphis.  Price told Eldridge that $5,000 was the most ARS would do, and he could accept or forget the offer.  ARS advised him that he was on extended medical leave and could remain on leave until November 2003, when he would be terminated because he had reached the maximum length of medical leave.  Eldridge asserts that ARS discharged or constructively discharged him by indicating that it would no longer employ him and would pay him only a minimal sum to resolve his situation with ARS.  After concluding his employment with ARS, Eldridge went to work in September 2003 at the City of Fort Worth as a Residential Building Inspector.

On April 1, 2004 Eldridge filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") based on the condition of and limitations imposed by his right knee.  On April 11, 2004 Eldridge applied for disability benefits with ARS's long-term disability carrier, Unum Provident ("Unum").  He became eligible for these benefits six months after his workers' compensation filing.  Unum approved his request by June 3, 2003 letter.  Eldridge has received long-term disability benefits from April 20, 2003 through at least the date he filed his summary judgment brief.  He was approved for 24 months of benefits based on the determination that he was "limited from performing the material and substantial duties of [his] regular occupation due to sickness

or injury." P. Br. 7.

B

Eldridge alleges that ARS violated the ADA by failing to reasonably accommodate his disability and by constructively discharging him in September 2003 because it refused to accommodate his disability. He avers that ARS violated the TWCA by retaliating against him, i.e., failing to accommodate his disability, for filing a workers' compensation claim.

ARS moves for summary judgment. It contends that Eldridge cannot recover under the ADA because he cannot establish that he is disabled, he did not qualify——with or without reasonable accommodation——for the Service Technician position, he did not suffer an adverse employment action, and ARS had a legitimate, nondiscriminatory reason for its actions. Concerning Eldridge's § 451.001 retaliation claim, ARS contends he cannot meet the required element of his prima facie case that obligates him to prove a causal link between his termination and the filing of his workers' compensation claim.

II

A

The ADA mandates that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual." 42 U.S.C. § 12112(a). To prevail on a discrimination claim under this provision, Eldridge "must

- 7 -

prove that 1) he has a 'disability'; 2) he is 'qualified' for the job; and 3) an adverse employment decision was made solely because of his disability." *Turco v. Hoechst Celanese Corp.*, 101 F.3d 1090, 1092 (5th Cir. 1996) (per curiam) (citing *Rizzo v. Children's World Learning Ctrs., Inc.*, 84 F.3d 758, 763 (5th Cir. 1996)). The *sine qua non* of a claim under the ADA is that the plaintiff is a qualified individual with a disability. *See id.* "'Disability' as used in the ADA means: '(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment.'" *Dupre v. Charter Behavioral Health Sys. of Lafayette Inc.*, 242 F.3d 610, 613 (5th Cir. 2001) (quoting 42 U.S.C. § 12102(2)). "[T]he duty to make a reasonable accommodation arises only when the individual is disabled . . . ." *Cannizzaro v. Neiman Marcus, Inc.*, 979 F. Supp. 465, 475 (N.D. Tex. 1997) (Solis, J.).

ARS contends it is entitled to summary judgment dismissing Eldridge's ADA claim because he is not disabled in that he is not substantially limited in the major life activity of working. ARS reasons that, although the ability to lift more than 50 pounds is an essential function of the Service Technician position, the inability to perform that one position does not render Eldridge substantially limited in the major life activity of working. It argues that, in the Fifth Circuit, because a restriction of 25

pounds on lifting is not a substantial limitation on the major life activity of working, it follows that a 50-pound limit is not.  ARS also posits that Eldridge resigned his employment while on leave from ARS to go to work for another employer and thus remains able to work.

Because ARS will not have the burden of proof at trial on Eldridge's ADA claim, it can obtain summary judgment by pointing the court to the absence of evidence to support an essential element of the claim.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Because it has done so, Eldridge must go beyond his pleadings and designate specific facts showing there is a genuine issue for trial.  *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).  Summary judgment is mandatory where the nonmoving party fails to meet this burden.  *Little*, 37 F.3d at 1076.  An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "The summary judgment nonmovant's failure to adduce proof as to any essential element of his cause of action renders all other facts immaterial." *Edgar v. Gen. Elec. Co.*, 2002 WL 318331, at *4 (N.D. Tex. Feb. 27, 2002) (Fitzwater, J.) (citing *Celotex Corp.*, 477 U.S. at 323).

In his response, Eldridge appears to advance two opposition arguments.  First, he maintains that he qualifies as disabled

because ARS regarded him as disabled.   Second, he contends he is disabled because his disability disqualifies him from performing a broad range of jobs in the job classification of pipelayers, plumbers, pipefitters, and steamfitters.

B

The court will turn initially to Eldridge's second argument: that he qualifies as disabled because he cannot perform a broad range of jobs in the job classification of pipelayers, plumbers, pipefitters, and steamfitters.   Eldridge argues that his disability consists of far more than a restriction on lifting, because he is also limited in squatting, bending, stooping, or working for an extended period of time on his knees.   He maintains that the cases on which ARS relies are distinguishable because they involve only a restriction on lifting.

Eldridge also cites testimony from his declaration that he contends permits the reasonable finding that he is disqualified from performing a broad class[4] of jobs due to restrictions on lifting, kneeling, stooping, bending, or working on his knees for an extended period of time.   Based on his work experience in plumbing or other construction trades, he opines that the restrictions on lifting and working on his knees for an extended

---

[4]Eldridge sometimes uses the term "range" rather than "class," *e.g.*, P. Br. 14, but it is otherwise clear from his briefing that he relies on an alleged inability to perform a class of jobs to establish that he is disabled.   *See infra* § II(C) (citing P. June 8, 2006 Resp. 1).

- 10 -

period of time prohibit him from working in construction jobs or in the construction occupation of pipelayers, plumbers, pipefitters, and steamfitters. Eldridge avers that he reviewed the U.S. Department of Labor Bureau of Labor Statistics Bulletin 2601, the 2006-07 Career Guide to Industries for construction, and the Occupational Outlook Handbook, 2006-2007 Edition——Pipelayers, Pipefitters and Steamfitters and compared his physical limitations against the physical requirements for construction in general and the pipefitter's/plumbing classification in particular.[5] Based on 30 years' experience in the plumber/pipefitter job classification, he opines that his physical limitations, including kneeling, not spending much time on his knees, and lifting restrictions prohibit him from performing the essential functions of the plumber/pipefitter classification without the help of an apprentice or helper, which is a common procedure in the plumber/pipefitter occupation.

C

"To be substantially limited in the major life activity of working, one must be 'significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities.'" *Blanks v. Sw. Bell Commc'ns,*

_____

[5]ARS objects to this evidence on the ground that the documents have not been properly authenticated. The court will assume *arguendo* that the evidence is admissible.

*Inc.*, 310 F.3d 398, 401 (5th Cir. 2002) (quoting 29 C.F.R. § 1630.2(j)(3)). "While an individual need not be completely unable to work, one is not substantially limited in working if he or she is unable to perform a single job or a narrow range of jobs." *Id.* In his response to ARS's notice of supplemental authority, Eldridge acknowledges that he is not relying on an inability to perform a broad range of jobs but is instead asserting an inability to perform a class of jobs. P. June 8, 2006 Resp. 1 ("The instant case deals with a plaintiff who is excluded from a 'class of jobs'.")

"If jobs utilizing an individual's skills (but perhaps not his or her unique talents) are available, one is not precluded from a substantial class of jobs." *Dupre*, 242 F.3d at 614 (quoting *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 472 (1999)).

> In determining whether someone is restricted from performing a "class of jobs," the regulations contemplate considering the "number and types of jobs utilizing similar training, knowledge, skills or abilities" to the person's former job, in a reasonably accessible geographical area, which are also foreclosed to the person because of his impairment.

*Tullos v. City of Nassau Bay*, 137 Fed. Appx. 638, 648 (5th Cir. 2005) (per curiam) (unpublished opinion) (citing 29 C.F.R. § 1630.2(j)(3)(ii)(B)).[6]

_____

[6]"A similar inquiry, but for jobs not utilizing similar training and skills, is contemplated for determining whether a person is restricted from a 'broad range of jobs in various

> A "class of jobs" is defined by the EEOC
> regulations as "[t]he job from which the
> individual has been disqualified because of an
> impairment, and the number and types of jobs
> utilizing similar training, knowledge, skills
> or abilities, within that geographical area,
> from which the individual is also disqualified
> because of the impairment."

*Crocker v. City of Kenner*, 2002 WL 31115255, at *8 (E.D. La. Sept. 23, 2002) (alteration in original) (quoting 29 C.F.R. § 1630.2(j)(3)(ii)(B)).

In this case, Eldridge contends he is disabled because medical restrictions on lifting, kneeling, stooping, bending, or working on his knees for an extended period of time prohibit him from performing a broad range of jobs in the job classification of pipelayers, plumbers, pipefitters, and steamfitters and from working in construction jobs or in the construction occupation of pipelayers, plumbers, pipefitters, and steamfitters. Even if the court accepts this evidence as true, it would not permit a reasonable trier of fact to find that Eldridge is significantly restricted in the ability to perform a class of jobs. As noted, a class of jobs includes not only the job from which Eldridge has been disqualified but other jobs that utilize similar training, knowledge, skills, or abilities that are found within the reasonably accessible geographical area. Eldridge's evidence does not purport to address the availability of such other jobs. He

---

classes.'" *Tullos*, 137 Fed. Appx. at 648 (citing 29 C.F.R. § 1630.2(j)(3)(ii)(C)).

focuses only on the single job classification of pipelayers, plumbers, pipefitters, and steamfitters, which is insufficient. *See, e.g., Lucas v. Miami County Bd. of Commm'rs*, 2000 WL 968806, at *8 (D. Kan. July 7, 2000) ("Plaintiff provides no evidence regarding the geographical area to which he has access, or the number and type of jobs demanding similar training from which defendant believed he was also disqualified."). This deficiency in his summary judgment evidence is material because *Sutton* teaches that if jobs that utilize his skills are available, he is not precluded from a substantial class of jobs. *See Sutton*, 527 U.S. at 492.

Moreover, the fact that after concluding his tenure at ARS[7] Eldridge promptly found employment as a City of Fort Worth Residential Building Inspector would preclude a reasonable trier of fact from finding that his physical limitations precluded him from employment using similar training, knowledge, skills, or abilities. ARS points out in its reply brief that Eldridge's job experience, training, and qualifications prepared him for the job of Residential Building Inspector. It urges that it is nonsensical for Eldridge to argue that he is precluded from working in a broad class of jobs when he is performing a job for which he was

_____

[7]Eldridge was actually still on long-term disability leave from ARS at the time he began working at the City of Fort Worth. Because the court views the disputed facts favorably to Eldridge, it assumes that he had completed his employment at ARS when he began working as a Residential Building Inspector.

qualified based on his past work and training.  In his surreply, Eldridge attempts to counter this contention on the basis that the Occupational Outlook Handbook treats Construction and Building Inspector as a separate job category that is not part of the category for pipelayers, plumbers, pipefitters, and steamfitters.[8] But this overlooks that the job of Building Inspector need only be one that utilizes *similar* training, knowledge, skills, or abilities to be sufficient to preclude a reasonable trier of fact from finding that Eldridge is substantially limited from performing a class of jobs.  In fact, the Occupational Outlook Handbook that Eldridge cites states that some pipelayers, plumbers, pipefitters, or steamfitters "move into *closely related* areas such as . . . building inspection."  P. App. 100011 (emphasis added).

In *Dupre* a plaintiff who suffered from a back condition was employed as a Mobile Assessment Coordinator.  In this position she responded to requests from outside medical providers for psychological assessments of patients and provided referrals for

---

[8]Eldridge also contends that the fact he had experience as a Regional Safety Coordinator Operations Manager and Interim General Manager does not alter the fact that he was disqualified from working in the major job category or pipelayers, plumbers, pipefitters, and steamfitters. But because the test for disability focuses not only on the job from which Eldridge has been disqualified but also on other jobs that utilize similar training, knowledge, skills, or abilities that are found within the reasonably accessible geographical area, evidence concerning Eldridge's past employment history is probative of other jobs that his training, knowledge, skills, or abilities would enable him to perform.

psychological hospitalization. *Dupre*, 242 F.3d at 611.   She alleged, *inter alia*, that she was disabled in the major life activity of working. *Id.* at 614.   The panel rejected this claim. In pertinent part, it noted that the fact that she had obtained a job as a Social Services Director at a nursing home after her discharge suggested "both that she 'retain[ed] the ability to compete successfully with similarly skilled individuals' and that she was not therefore restricted from performing a broad range *or class of jobs*." *Id.* at 615 (emphasis added) (alteration in original) (quoting *Hamilton v. Sw. Bell Tel. Co.*, 136 F.3d 1047, 1051 (5th Cir. 1998)).   The panel also held that "no reasonable juror could have concluded that she was substantially limited in the major life activity of working." *Id.; see also, e.g., Santiago Clemente v. Executive Airlines, Inc.*, 213 F.3d 25, 32 (1st Cir. 2000) (affirming summary judgment and holding, *inter alia*, that flight attendant who had hearing impairment was not substantially limited in major life activity of working where record indicated she was qualified for various ground positions, including receptionist, payroll clerk, and operational manager).

Viewed favorably to Eldridge, the evidence shows that, due to medical restrictions on his ability to lift, kneel, stoop, bend, or work on his knees for an extended period of time, he cannot work at any job classified as a pipelayer, plumber, pipefitter, or steamfitter and in construction jobs or in the construction

occupations of pipelayer, plumber, pipefitter, or steamfitter. But Eldridge has adduced no evidence that would permit a reasonable trier of fact to find that he is unable to perform other jobs that utilize *similar* training, knowledge, skills, or abilities that are found within the reasonably accessible geographical area. And the undisputed fact that he promptly found employment as a City of Fort Worth Residential Building Inspector would preclude a reasonable trier of fact from finding that his physical limitations prevent him from employment using *similar* training, knowledge, skills, or abilities, i.e., from performing a class of jobs.

Eldridge has therefore failed to meet his summary judgment burden of adducing evidence that would enable a reasonable trier of fact to find that he is substantially limited in the major life activity of working and thus disabled under the ADA on that basis. He cannot recover for ADA discrimination, including failure to provide a reasonable accommodation.

III

The court now addresses Eldridge's first contention: that he is disabled under the ADA because ARS regarded him as disabled.

A

A person is regarded as disabled if he

> (1) has an impairment which is not substantially limiting but which the employer perceives as constituting a substantially limiting impairment; (2) has an impairment which is substantially limiting only because of the attitudes of others toward such an

- 17 -

> impairment; or (3) has no impairment at all
> but is regarded by the employer as having a
> substantially limiting impairment.

*Bridges v. City of Bossier*, 92 F.3d 329, 332 (5th Cir. 1996)

(citing *Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 727-28 n.19

(5th Cir. 1995)).  "[T]he covered entity must entertain some

misperception regarding the individual——either that he has a

substantially limiting impairment that he does not have or the

impairment is not so limiting as believed." *Aldrup v. Caldera*, 274

F.3d 282, 287 (5th Cir. 2001).  The plaintiff "must establish that

the impairment, if it existed as perceived, would be substantially

limiting." *Dupre*, 242 F.3d at 616 (citing *McInnis v. Alamo Cmty.*

*Coll. Dist.*, 207 F.3d 276, 281 (5th Cir. 2000)).  "An individual

must be regarded as precluded from more than a particular job in

order to establish that he was treated a[s] having an impairment

that substantially limits one's ability to work." *McClure v. Gen.*

*Motors Corp.*, 75 Fed. Appx. 983, 2003 WL 21766539, at *2 (5th Cir.

2003) (per curiam) (unpublished opinion) (citing *Murphy v. United*

*Parcel Serv., Inc.*, 527 U.S. 516, 523 (1999)).

B

ARS has pointed to the absence of evidence that it regarded

Eldridge as substantially limited in the major life activity of

working.  It contends, *inter alia*, that he cannot show that ARS

regarded his disability as precluding him from employment in an

entire class of jobs.[9]  Because ARS will not have the burden of proof at trial on Eldridge's ADA claim, it can obtain summary judgment by pointing the court to the absence of evidence to support an essential element of the claim. *See Celotex Corp.*, 477 U.S. at 325.  Eldridge must go beyond his pleadings and designate specific facts showing there is a genuine issue for trial. *See id*. at 324; *Little*, 37 F.3d at 1075.  Summary judgment is mandatory where the nonmoving party fails to meet this burden. *Little*, 37 F.3d at 1076.  An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248.  Eldridge's failure to produce proof as to any essential element renders all other facts immaterial. *Edgar*, 2002 WL 318331, at *4 (citing *Celotex Corp.*, 477 U.S. at 323).

Eldridge maintains that ARS regarded him as disabled because it withdrew its reasonable accommodation offer.  He contends that, in the May 21, 2003 meeting with Parson, Polk, and Johnson, after ARS informed him there were no other positions available or any alternative work, Eldridge told them that Dr. Haenke had said he could continue to work as a plumber, provided he had the assistance of a helper.  Parson later advised Eldridge that ARS would furnish

---

[9]ARS argues that, by making the claim that ARS regarded him as disabled, Eldridge has effectively conceded that he is not disabled, since it is required that the employer harbor the mistaken belief that the employee is disabled.  The court will assume that Eldridge is bringing these claims in the alternative.

a full-time helper, provided he was paid by commission and the helper's pay was taken from the commissions. Eldridge agreed to this arrangement. Within a few days, however, Parson told Eldridge that he could not continue to work until ARS corporate knew more about his disability, and he needed to return his truck to the shop. In July 2003 Johnson informed Eldridge that ARS was not going to accommodate his disability because it felt it was a hardship. ARS eventually offered Eldridge $5,000 to help him with the transition.

Eldridge has failed to adduce evidence that would permit a reasonable trier of fact to find that ARS regarded him as disabled. Although Eldridge does not explicitly identify the specific prong of the "regarded as" test on which he relies, it appears that he is asserting that he has an impairment that is not substantially limiting but that ARS perceived as constituting a substantially limiting impairment.[10] He does not allege that he has an impairment

---

[10]Eldridge relies on *Rodriguez v. ConAgra Grocery Products Co.*, 436 F.3d 468 (5th Cir. 2006), contending that the present case and *Rodriguez* are similar. This suggests that he is relying on the first prong.

Eldridge's reliance on *Rodriguez*, however, is misplaced because it is factually distinguishable. In *Rodriguez* a plaintiff who suffered from Type II diabetes was rejected for employment as not medically qualified after he failed a medical test that the employer interpreted as showing his diabetes was uncontrolled. *Id.* at 472. In response to an interrogatory, the employer stated that the plaintiff was not qualified for any other positions at the plant, including positions for which he would have been qualified with a reasonable accommodation. *Id.* at 477. In the instant case, Eldridge's evidence, viewed favorably to him, would support the finding that ARS regarded him as incapable of performing the job of

that is substantially limiting only because of the attitudes of others toward such an impairment.  And he does not contend that he has no impairment at all.  *See Pegram v. Honeywell, Inc.*, 361 F.3d 272, 287 (5th Cir. 2004) (noting that plaintiff did not claim that he had no impairment at all but was regarded by employer as having substantially limiting impairment because it was undisputed that his back injury was an impairment).

To establish that ARS regarded him as disabled under the first prong of the test——i.e., that he has an impairment that is not substantially limiting but that ARS perceived as constituting a substantially limiting impairment——Eldridge must show that ARS regarded him "as substantially limited in his ability to work by finding that [his] impairment foreclose[d] his ability to perform a class of jobs or a broad range of jobs." *Id.* ("[T]o survive summary judgment, an employee must show that an employer regarded the employee as substantially limited in his ability to work by finding that the employee's impairment forecloses his ability to perform a class of jobs or a broad range of jobs."); *see also, e.g., Collins v. Saia Motor Freight Lines, Inc.*, 144 Fed. Appx. 368, 371 (5th Cir. 2005) (unpublished opinion) ("Where, as here,

---

Service Technician or of plumber and that it was unwilling to accommodate his disability because it felt that doing so imposed a hardship.  But the evidence would not support the finding that ARS perceived him to be unqualified based on his medical condition for any ARS jobs, even those that he could perform with a reasonable accommodation.

the plaintiff alleges that working is the life activity in which he is limited, he must demonstrate that the perception of disability would limit him from a broad class of jobs, defined as 'jobs utilizing similar training, knowledge, skills or abilities, within that geographical area . . . .'" (omission in original) (quoting *Bridges*, 92 F.3d at 334)). Eldridge has not carried this burden.

At most the record would permit the reasonable finding that ARS believed that Eldridge was under medical restrictions on lifting, kneeling, stooping, bending, or working on his knees for an extended period of time that prevented him from performing the job of Service Technician or of plumber. But "an employer's 'belie[fs] that [an employee] is incapable of performing a particular job,' without more, is insufficient to establish an impairment that substantially limits the employee's ability to work." *Pegram*, 361 F.3d at 287 (alterations in original) (quoting *Foreman v. Babcock & Wilcox*, 117 F.3d 800, 806 (5th Cir. 1997)). Eldridge has not presented evidence that would permit a reasonable finding that ARS's statement that there were no other positions available or any alternative work was based on a perception that he was incapable of performing those positions or work.[11] And even if

_____

[11]Polk's statement to Eldridge in December 2002 that ARS had no available sedentary or light duty jobs that could accommodate the restrictions that Eldridge's doctor had imposed is not to the contrary or sufficient to raise a genuine issue of material fact. That statement was made based on restrictions imposed before Eldridge underwent surgery and physical therapy and his doctor cleared him to return to work.

the court assumes that ARS regarded him as incapable of performing the job classification of pipelayer, plumber, pipefitter, or steamfitter, for the reasons the court has already explained, this is not a "class of jobs" within the meaning of the ADA.

Because Eldridge has failed to introduce evidence that would permit a reasonable trier of fact to find that ARS regarded his disability as precluding him from employment in an entire class of jobs, he cannot establish that he is disabled under the "regarded as" prong of the ADA. Being disabled is the *sine qua non* of an ADA claim. Lacking that required element, he cannot recover for ADA discrimination, including failure to provide a reasonable accommodation.

ARS is entitled to summary judgment dismissing Eldridge's ADA claim because a reasonable trier of fact could not find that he is a qualified individual with a disability, either on the basis that he is disabled or that ARS regarded him as disabled.

IV

ARS next moves for summary judgment dismissing Eldridge's retaliation claim, contending he cannot meet the requirements of a prima facie case because he voluntarily resigned from employment at ARS and he cannot establish that but for the filing of his claim for workers' compensation benefits, his employment would not have been terminated.

A

Texas law follows a type of burden-shifting method for determining whether Eldridge is entitled to prevail on a workers' compensation retaliation claim. *See Anderson v. Corrugated Servs., Inc.*, 2001 WL 585760, at *2 (N.D. Tex. May 24, 2001) (Fitzwater, J.) (citing *Terry v. S. Floral Co.*, 927 S.W.2d 254, 257 (Tex. App. 1996, no writ)). Initially, Eldridge has the burden of establishing a causal link between his participation in the protected activity, e.g., filing a workers' compensation claim, and ARS's alleged retaliatory action, i.e., terminating his employment. *See Aust v. Conroe Indep. Sch. Dist.*, 153 S.W.3d 222, 227 (Tex. App. 2004, no pet.) (citations omitted). "This causal connection is an element of the employee's prima facie case, and may be established by direct or circumstantial evidence." *Terry*, 927 S.W.2d at 257. Eldridge need not show that he was discharged solely because he filed a workers' compensation claim, but he must demonstrate that filing the claim was at least a determining factor in his discharge. The causal link that Eldridge "must establish at the prima facie stage consists merely of establishing the historical facts that the employer was aware of the protected activity and that the employee was subsequently terminated." *Anderson*, 2001 WL 585760, at *3.

Once Eldridge establishes this link, ARS has the burden of rebutting the alleged discrimination by showing it had a legitimate

- 24 -

reason for terminating his employment. *See id.* at *2. If ARS meets this obligation, then to survive summary judgment, Eldridge must produce controverting evidence of ARS's retaliatory motive. Specifically, he must show that he would not have been discharged but for his assertion of a workers' compensation claim. At the summary judgment stage, Eldridge need only present evidence that raises a genuine issue of material fact. *Id.*

                                    B

In this case, ARS disputes at a threshold level Eldridge's assertion that his employment was terminated. This issue is hotly contested in the briefing. The court will assume *arguendo* that Eldridge has adduced sufficient evidence for a reasonable trier of fact to find that he was constructively discharged and that he has established the historical facts that ARS was aware of his workers' compensation claim and later terminated his employment.

The court will also raise *sua sponte* that ARS has produced evidence of a legitimate reason for terminating his employment. "In Texas, an employer is permitted to terminate an employee who sustains a job-related injury if it ultimately appears that, due to the nature of the injury, the employee can no longer perform the essential functions of his position." *Burfield v. Brown, Moore & Flint, Inc.*, 51 F.3d 583, 590 (5th Cir. 1995) (per curiam) (addressing § 451.001 claim). Although ARS does not unmistakably rely on the following evidence in response to Eldridge's workers'

compensation retaliation claim——because it maintains that it did not discharge him——it contends in opposition to his ADA claim that it had a legitimate reason for its decisions: he was not qualified to perform the essential functions of the Service Technician position.[12]   ARS points to evidence that an essential function of the Service Technician position is the ability to lift up to 100 pounds.   Eldridge had a 50-pound lifting limitation, however, and he could not perform the position without a helper to lift for him. On May 21, 2003 Dr. Haenke released Eldridge to return to work with permanent restrictions.   These included limiting his time on his knees and not being required to lift over 50 pounds on a regular basis.   Dr. Haenke also completed a Texas Workers' Compensation Commission Work Status Report that included a Functional Capacity

---

[12]ARS contends in the introduction to its opening brief that it "had legitimate, nondiscriminatory, and nonpretextual reasons for all of its actions that were unrelated to Plaintiff's claim for workers' compensation benefits."  D. Br. 3.  It did not, however, in the relevant part of its brief make clear that it was relying on this evidence to establish with respect to his retaliation claim that it had a legitimate reason for its decision.  *See id.* at 15-17.  The evidence concerning ARS's legitimate, nondiscriminatory reason for its actions is cited only in support of summary judgment concerning Eldridge's ADA claim.  *See id.* at 14-15.  Moreover, in ARS's reply brief, it does not argue that it has adduced a legitimate reason in the context of Eldridge's retaliation claim. *See* D. Reply. Br. 16.  Although in its final reply brief (the court permitted Eldridge to file a surreply and ARS to file a final reply) ARS reiterated that it had legitimate, nondiscriminatory, and non-pretextual reasons for its actions that were unrelated to his claim for workers' compensation benefits, *see* D. Final Reply Br. 1, this assertion is not sufficient of itself to cure the briefing defect.  Accordingly, the court will treat this argument as one that it has raised *sua sponte* and will afford Eldridge an opportunity to oppose this basis for granting summary judgment.

Equivalent.  He opined that Eldridge was qualified to perform light duty work, including occasional lifting of 13 pounds, frequent lifting of seven pounds, and no constant lifting.   These restrictions precluded Eldridge from performing an essential function of the Service Technician position.

This court can grant summary judgment *sua sponte*, provided it gives Eldridge adequate notice.  *See, e.g.*, *Arkwright-Boston Mfrs. Mut. Ins. Co. v. Aries Marine Corp.*, 932 F.2d 442, 445 (5th Cir. 1991) ("[D]istrict courts can definitely grant summary judgment *sua sponte*, upon proper notice to the adverse party.").  Accordingly, the court raises on its own that ARS has met its burden of rebutting the alleged retaliation by showing it had a legitimate reason for terminating Eldridge's employment: that he could not perform the essential functions of the Service Technician position. Subject to Eldridge's right to challenge this conclusion, the court holds that ARS has satisfied its burden by proffering evidence that it had a legitimate reason for its decision.  Eldridge may oppose this basis for granting summary judgment by following the procedure set forth *infra* at § V.

C

The final question under the burden-shifting paradigm is whether Eldridge has adduced evidence that would permit a reasonable trier of fact to find that ARS's proffered reason—that he could not perform the essential functions of the Service

- 27 -

Technician position——is pretextual.  Because ARS will not have the burden at trial on this component of Eldridge's claim, it can obtain summary judgment by pointing the court to the absence of evidence to support it.  *See Celotex Corp.*, 477 U.S. at 325. Because it has done so here,[13] Eldridge must go beyond his pleadings and designate specific facts showing there is a genuine issue for trial.  *See id.* at 324; *Little*, 37 F.3d at 1075.  Summary judgment is mandatory where the nonmoving party fails to meet this burden. *Little*, 37 F.3d at 1076.  An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Anderson*, 477 U.S. at 248.

Apart from discussing generally the legal standards that apply to a retaliation claim and to adjudicating a summary judgment motion, *see* P. Br. 19-21, Eldridge's entire opposition argument is contained in these two sentences:

> In the instant case, the fact is that Eldridge filed a workers' compensation claim, and while he was on workers' compensation, ARS arbitrarily terminated Eldridge without explanation, withdrawing his reasonable accommodation.  This should be sufficient to send this issue to trial.

*Id.* at 21.  As ARS points out in its reply brief, the assertion in is not supported by citation to any factual basis.  *See* D. Reply Br. 16.

---

[13]*See, e.g.,* D. Br. 3 ("[T]here is not causal connection between Plaintiff's voluntary resignation and his claim for workers' compensation benefits nearly a year earlier.").

N.D. Tex. Civ. R. 56.5(c) provides that "[a] party whose . . . response is accompanied by an appendix must include in its brief citations to each page of the appendix that supports each assertion that the party makes concerning the summary judgment evidence." This court is not required to comb the record in search of a genuine issue of material fact. *See Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 463 (5th Cir. 1996) ("Rule 56 does not impose a duty on the district court to sift through the record in search of evidence to support a party's opposition to summary judgment."). To satisfy his burden under *Celotex*, Eldridge must designate specific facts that show there is a genuine issue for trial, e.g., that would enable a reasonable trier of fact to find that he could perform the Service Technician position. Because Eldridge has not cited summary judgment evidence and instead relies on the assertions of his brief, he "is relegated to [his] unsworn pleadings, which do not constitute summary judgment evidence." *Bookman v. Shubzda*, 945 F. Supp. 999, 1002 (N.D. Tex. 1996) (Fitzwater, J.) (citing *Solo Serve Corp. v. Westowne Assocs.*, 929 F.2d 160, 165 (5th Cir. 1991)). "Unsworn pleadings, memoranda, or the like are not, of course, competent summary judgment evidence." *Larry v. White*, 929 F.2d 206, 211 n.12 (5th Cir. 1991). Conclusory assertions, made without any citation to evidence, are insufficient to withstand summary judgment. *See, e.g., Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002).

Moreover, the court's review of the record corroborates that a reasonable jury could not find that ARS retaliated against Eldridge for filing a workers' compensation claim.  Viewing the summary judgment evidence favorably to Eldridge and drawing all reasonable inferences in his favor, a reasonable trier of fact could find that Eldridge filed a workers' compensation claim on October 21, 2002 and began receiving medical care in response.  In a December 18, 2002 letter, ARS approved workers' compensation leave beginning December 16, 2002 and ending when Eldridge was released by his treating physician.  Eldridge underwent surgery, a period of recuperation and physical therapy, and returned to work. It was not until September 2003, almost eleven months after he filed his claim, and after he had undergone surgery, post-operative care, and rehabilitation that ARS discharged him (assuming *arguendo* that it did).  A reasonable jury could not find from this evidence that ARS retaliated against Eldridge for filing the workers' compensation claim.

V

Accordingly, to prevent summary judgment on his retaliation claim, within 20 days of the date this memorandum opinion and order is filed, Eldridge must file a response that demonstrates that the claim should not be dismissed.  After considering the response, the court will either dismiss the claim on the basis set forth in this memorandum opinion and order or invite ARS to file a response.  If

Eldridge opts not to respond, the court will enter a final judgment in accordance with this memorandum opinion and order.

*     *     *

ARS's February 1, 2006 motion for summary judgment is granted. Eldridge is granted 20 days to file the response addressed *supra* at § V.

**SO ORDERED.**

July 19, 2006.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE