```
            IN THE UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF TEXAS
                     DALLAS DIVISION

CARNEY ELDRIDGE,                  §
                                  §
              Plaintiff,          §
                                  § Civil Action No. 3:04-CV-2073-D
VS.                               §
                                  §
AMERICAN RESIDENTIAL SERVICES     §
L.L.C. f/k/a RESCUE ROOTER,       §
L.L.C.,                           §
                                  §
              Defendant.          §
```

MEMORANDUM OPINION
AND ORDER

The court revisits this case to decide whether defendant is entitled to summary judgment dismissing plaintiff's retaliation claim under Tex. Lab. Code Ann. § 451.001 (Vernon 1996). The court holds that it is.

I

In a memorandum opinion and order filed July 19, 2006, the court granted summary judgment dismissing, *inter alia*, the claim of plaintiff Carney Eldridge ("Eldridge") against defendant American Residential Services L.L.C. f/k/a Rescue Rooter, L.L.C. ("ARS") for retaliation for filing a claim for workers' compensation benefits, in violation of the Texas Workers' Compensation Act ("TWCA"), Tex. Lab. Code Ann. § 451.001 (Vernon 1996). *See Eldridge v. Am. Residential Servs. L.L.C.*, 2006 WL 2035654, at *12 (N.D. Tex. July 19, 2006) (Fitzwater, J.) ("*Eldridge I*"). Because the court raised *sua sponte* one ground on which it relied to dismiss the claim, it permitted Eldridge to file an additional opposition response.

Eldridge has done so, and the court now addresses the claim in light of his response.

II

In deciding in *Eldridge I* whether ARS was entitled to summary judgment dismissing the retaliation claim, the court held that after Eldridge had established a causal link between his filing a workers' compensation claim and ARS's alleged retaliatory act of terminating his employment, ARS was obligated to rebut the alleged discrimination by showing it had a legitimate reason for terminating him. *See id.* at 9-10. If ARS met this obligation, Eldridge was required to present evidence that raised a genuine issue of material fact that he would not have been discharged but for his assertion of a workers' compensation claim. *See id.* at *10.

The court assumed *arguendo* that Eldridge had adduced sufficient evidence for a reasonable trier of fact to find that he was constructively discharged and that he had established the historical facts that ARS was aware of his workers' compensation claim and later terminated him. *Id.* The court also raised *sua sponte* that ARS had produced evidence of a legitimate reason for terminating his employment: that, due to the nature of his injury, Eldridge could no longer perform the essential functions of his Service Technician position. *Id.* (citing *Burfield v. Brown, Moore & Flint, Inc.*, 51 F.3d 583, 590 (5th Cir. 1995) (per curiam)). In

opposing Eldridge's claim under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, ARS had offered this legitimate reason for its decision.

ARS pointed to evidence that an essential function of the Service Technician position was the ability to lift up to 100 pounds. Eldridge had a 50-pound lifting limitation, and he could not perform the position without a helper to lift for him. In May 2003 Richard F. Haenke, D.O. ("Dr.Haenke") had released Eldridge to return to work with permanent restrictions, which included limiting his time on his knees and not being required to lift over 50 pounds regularly. Dr. Haenke also opined that Eldridge was qualified to perform light duty work, including occasional lifting of 13 pounds, frequent lifting of seven pounds, and no constant lifting. These restrictions precluded Eldridge from performing an essential function of the Service Technician position. *Eldridge I*, 2006 WL 2035654, at *10. Because the court had raised *sua sponte* that ARS had met its burden of rebutting the alleged retaliation by showing that Eldridge could not perform the essential functions of the Service Technician position, it permitted Eldridge to file an opposition response that demonstrates that the claim should not be dismissed. *Id.*

The court then turned to the question whether Eldridge had adduced evidence that would permit a reasonable trier of fact to find that ARS's proffered reason was pretextual. It concluded that

- 3 -

he had not because, apart from discussing generally the legal standards that applied to a retaliation claim and to adjudicating a summary judgment motion, his two-sentence opposition argument was not supported by the citation of summary judgment evidence. *Id.* at *11. Because he relied instead on the assertions of his brief, he was relegated to unsworn pleadings that did not constitute summary judgment evidence and were insufficient to withstand summary judgment. *Id.*

Based on its review of the record, the court also held that a reasonable trier of fact could not find that ARS had retaliated against Eldridge for filing a workers' compensation claim. *Id.* at *12. The summary judgment evidence would only enable a reasonable finding that Eldridge filed a workers' compensation claim in October 2002 and began receiving medical care in response, that ARS approved workers' compensation leave beginning December 16, 2002 and ending when Eldridge was released by his treating physician, that Eldridge underwent surgery, a period of recuperation and physical therapy, and returned to work, and that it was not until September 2003, almost eleven months after he filed his claim, and after he had undergone surgery, post-operative care, and rehabilitation, that ARS discharged him. *Id.* The court concluded that a reasonable jury could not find from this evidence that ARS retaliated against Eldridge for filing the workers' compensation claim. *Id.*

III

Eldridge maintains in his response that ARS is not entitled to summary judgment on his retaliation claim.

A

Eldridge argues that *Burfield* and the Texas case it cites, *Schrader v. Artco Bell Corp.*, 579 S.W.2d 534 (Tex. App. 1979, writ ref'd n.r.e.), are distinguishable, because he was never given the opportunity to show that he could perform the essential functions of the job he had before his injury. He maintains that ARS withdrew the agreed-upon reasonable accommodation of allowing him to demonstrate that he could perform the essential functions of his job by working on a commission basis with a full-time helper. Eldridge posits that ARS violated an obligation to engage in good faith in a flexible, interactive process with a disabled employee by withdrawing in bad faith the accommodation to which it had agreed. He also asserts that ARS violated the good faith process and obligation under § 451.001 to allow him to demonstrate that he could perform the essential functions of his position.

Eldridge has not cited any authority that holds that, under Texas law generally or § 451.001 particularly, ARS was obligated to engage in an interactive process with him.[1] *Burfield* clearly

---

[1] Eldridge does not cite new authorities in his latest response. The authorities that he appears to rely on in his original response pertain to an employer's obligations under the ADA, not § 451.001. *See* P. Mar. 13, 2006 Br. 16-19.

- 5 -

interprets Texas law to provide that an employer can terminate an employee who sustains a job-related injury that prevents him from performing the essential functions of his position. *See Burfield*, 51 F.3d at 590. Nor could a reasonable trier of fact find that, even had ARS engaged in such a process and allowed Eldridge to demonstrate that he could perform the essential functions of his position, he could have done so. The summary judgment record shows that an ARS Service Technician—not one who is assisted by a helper—must be able to lift up to 100 pounds and that Eldridge had a 50-pound lifting limitation. The gravamen of Eldridge's case is that ARS should have accommodated him by allowing him to continue his employment with the assistance of a helper who could, among other things, assist him in lifting heavy objects. He has therefore conceded that he could not by himself perform the essential functions of his position

B

Eldridge also maintains that he has adduced sufficient evidence to establish a causal link between his termination and the filing of his workers' compensation claim. He urges that this evidence consists of proof that ARS knew he had filed a workers' compensation claim, ARS showed a negative attitude toward his injured condition by withdrawing in bad faith the accommodation to which it had agreed, and ARS violated company policy and a legal duty of giving an employee a reasonable opportunity to show he

could perform the essential functions of the job with reasonable accommodation by in bad faith withdrawing the accommodation it had agreed to extend.

> An employee claiming discharge in violation of § 451.001 has the burden of at least demonstrating a causal link between the discharge and the filing of the claim for workers' compensation benefits. While the employee can meet this burden without showing that he was fired solely because of the filing of the workers' compensation claim, he must show that the filing of the claim was at least a determining factor in the discharge.

*Burfield*, 51 F.3d at 589-90 (citing, *inter alia*, *Pope v. MCI Telecomms. Corp.*, 937 F.2d 258, 265 (5th Cir. 1991)).  For the reasons explained in *Eldridge I*, Eldridge has not pointed to evidence that would permit a reasonable trier of fact to find in his favor, i.e., that the filing of the claim was at least *a* determining factor in ARS's decision to terminate his employment.

According to the summary judgment record, Eldridge filed a workers' compensation claim in October 2002. *Eldridge I*, 2006 WL WL 2035654, at *12.  He began receiving medical care in response, and ARS approved workers' compensation leave for him beginning December 16, 2002 and ending when he was released by his treating physician.  Eldridge underwent surgery, a period of recuperation and physical therapy, and returned to work.  ARS never took adverse action against him during this period; instead, it approved medical care for his injury.  It was not until September 2003, almost

eleven months after he filed his claim,[2] and after he had undergone surgery, post-operative care, and rehabilitation, and returned to work with physician-ordered restrictions that prevented him from performing all the essential functions of his position as a Service Technician, that ARS discharged him. *Id.* A reasonable trier of fact could not find from this evidence that ARS retaliated against Eldridge for filing the workers' compensation claim. *Id.*

C

Eldridge also maintains for the first time that ARS violated § 451.001 by withdrawing the opportunity for him to demonstrate that he could perform the essential functions of his job after a work-related injury.[3] For the reasons explained *supra* at § III(B), a reasonable trier of fact could not find that his filing the workers' compensation claim was a determining factor in ARS's decision to withdraw this opportunity. A reasonable trier of fact

---

[2]*See Burfield*, 51 F.3d at 590 (noting that Texas courts frequently look to temporal proximity between protected activity and adverse employment action for circumstantial evidence of retaliatory motive, and holding that long period of time (15 to 16 months before termination) that elapsed between filing of claim and termination militated against finding of retaliation).

[3]This assertion exceeds the scope of the argument he presented in his initial responsive brief. There he relied only on his termination as the basis for his § 451.001 claim. *See* P. Mar. 13, 2006 Br. 21 (contending that "[i]n the instant case, the fact is that Eldridge filed a workers' compensation claim, and while he was on workers' compensation, ARS arbitrarily terminated Eldridge without explanation, withdrawing his reasonable accommodation. This should be sufficient to send this issue to trial."). The court will assume *arguendo* that Eldridge did not waive this new argument and that the court should allow him to present it.

would be required to disregard the fact that, after Eldridge filed the claim in October 2002, ARS took no adverse action against him. Instead, it approved workers' compensation leave for him beginning December 16, 2002 and ending when he was released by his treating physician.  During the periods when he underwent surgery, recuperated, and underwent physical therapy, ARS took no adverse action but instead approved medical care for his injury.  It was not until June 2003, after Eldridge had returned to work with physician-ordered restrictions that prevented him from performing all the essential functions of his position as a Service Technician, that ARS informed him it would not allow him to work on commission with a helper.[4]  A reasonable trier of fact could not find based on this evidence that the filing of his workers' compensation claim in October 2002 claim was a determining factor in ARS's decision in June 2003 to withdraw the opportunity for Eldridge to demonstrate that he could perform the essential functions of the Service Technician job.

\* \* \*

Accordingly, having considered Eldridge's response, the court holds that ARS is entitled to summary judgment dismissing his retaliation claim under § 451.001.  The court enters judgment in

---

[4] It was not until July 2003 that ARS advised him that it was not willing to accommodate his disability because it felt doing so imposed a hardship. *See Eldridge I*, 2006 WL 2035654, at \*2.  The court will use the June date because it arguably benefits Eldridge as the nonmovant.

favor of ARS dismissing this case with prejudice for the reasons set out in *Eldridge I* and this memorandum opinion and order.

**SO ORDERED.**

August 10, 2006.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE